# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

LEONITE CAPITAL LLC, a Delaware
limited liability company,

        Plaintiff,

v.

FOUNDERS BAY HOLDINGS, a Nevada
corporation, and FOUNDERS BAY
TECHNOLOGIES, INC., a Delaware
corporation,

        Defendants.

C.A. No. 1:22-cv-01547-TBD

## MEMORANDUM ORDER

Before the court is plaintiff's emergency motion to appoint a receiver. (D.I. 3). For the following reasons, plaintiff's motion is DENIED.

I.    BACKGROUND

Plaintiff Leonite Capital LLC ("Leonite") and defendants Founders Bay Holdings and Founders Bay Technologies, Inc. (collectively "Founders Bay") entered into a Securities Purchase Agreement ("Agreement") dated April 6, 2021. Pursuant to the Agreement, Leonite purchased a Senior Secured Convertible Promissory Note ("Note") from Founders Bay, receiving as further consideration 85,000 shares of stock and warrants to purchase additional shares of stock at a defined exercise price. The Note is dated April 6, 2021. Leonite and Founders Bay further entered into a Pledge and Security Agreement ("Security Agreement"), also dated April 6, 2021, which granted Leonite "a continuing security interest in and to, a lien upon, assignment of, and right of set-off against" collateral listed in Exhibit A to the Security

Agreement. (D.I. 5-3 at 3, § 3). The Security Agreement provides: "To the extent permitted by applicable law, [Leonite] shall have the following rights and remedies regarding the appointment of a receiver: (1) [Leonite] may have a receiver appointed as a matter of right . . . ." (D.I. 5-3 at 8, § 7(a)(i)(G)).

On April 7, 2021, Leonite advanced $500,000.000 to Founders Bay pursuant to the Agreement. Leonite alleges that Founders Bay subsequently failed to meet at least five of its contractual obligations, constituting numerous defaults. Leonite alleges that it "has been unable to reach [Founders Bay] or their principals" since May 2022 (D.I. 4 at 6, ¶ 16) and has not received financial information or updates from Founders Bay since August 2021. On October 24, 2022, Leonite issued a Notice of Secured Party's Disposition of Collateral ("Notice") notifying Founders Bay that Leonite intended to foreclose on its collateral.

On November 4, 2022, Founders Bay brought suit in this court against Leonite seeking rescission of the contracts for various violations of the Securities Exchange Act of 1934. *Founders Bay v. Leonite Capital LLC*, C.A. No. 22-cv-1453.

On November 29, 2022, Leonite filed the present lawsuit for breach of contract and appointment of a receiver. The next day, Leonite filed an *ex parte* emergency motion to appoint a receiver. (D.I. 3). On December 2, 2022, the court refused to consider the motion on an *ex parte* basis and instead ordered Leonite to serve Founders Bay with the complaint, motion, and briefing. (D.I. 7). Briefing is now complete. (D.I. 4, 25, 26).[1] By the parties' agreement, the *Founders Bay* action has been consolidated with the present action. (D.I. 14).

---

[1] The court appreciates the willingness of defendants' attorneys to continue representation despite difficulties in client communications.

2

## II.   LEGAL STANDARDS

"An equity receiver is a person specially appointed by the court to take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of preserving the property, receiving rents, issues, or profits, and undertaking any other appropriate action with regard to the property pending its final disposition by the suit." 12 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2981 (3d ed. 2022). Rule 66 of the Federal Rules of Civil Procedure provides that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued." Fed. R. Civ. P. 66. In a diversity action, federal law governs the appointment of receivers. *Orth v. Transit Inv. Corp.*, 132 F.2d 938, 945 (3d Cir. 1942); *Campbell v. Pa. Indus., Inc.*, 99 F. Supp. 199, 204 (D. Del. 1951).

"The appointment of a receiver is an equitable remedy of rather drastic nature available at the discretion of the court having jurisdiction of the subject matter and the parties." *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 824 (3d Cir. 1959). "[R]eceivership . . . should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid." *Gordon v. Washington*, 295 U.S. 30, 39 (1935). The party seeking the appointment of a receiver must have "legally recognized right in that property that amounts to more than a mere claim against defendant." Wright & Miller, *supra*, § 2983.

District courts in this circuit have concluded, and the parties agree, that nine factors are relevant to the issue:

> (1) the probability of the plaintiff's success in the action;
>
> (2) the possibility of irreparable injury to the plaintiff's interests in the property;
>
> (3) the inadequacy of the security to satisfy the debt;

3

> (4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;
>
> (5) the financial position of the debtor;
>
> (6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
>
> (7) the inadequacy of available legal remedies;
>
> (8) the lack of a less drastic equitable remedy; and
>
> (9) the likelihood that appointing a receiver will do more harm than good.

*Fimbel v. Fimbel Door Corp.*, Civ. Action No.: 14-1915 (FLW)(DEA), 2016 WL 1379788, at *3 (D.N.J. Apr. 7, 2016) (citation omitted). Similarly, Wright & Miller list the following factors:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

Wright & Miller, *supra*, § 2983 (footnotes omitted). Other circuits have endorsed similar factors. *See, e.g., Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993); *Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009).

III. DISCUSSION

A threshold issue is whether Leonite is a secured creditor having a "legally recognized right in [the] property that amounts to more than a mere claim" against Founders Bay. Wright & Miller, *supra*, § 2983. The parties dispute whether Leonite is a secured creditor, but even assuming for the purposes of this analysis that Leonite is a secured creditor, Leonite has not shown it is entitled to the appointment of a receiver.

In support of its motion, Leonite has submitted seven exhibits. (*See* D.I. 5, 6). Three of the exhibits are the underlying agreements—the Agreement, the Note, and the Security Agreement.

4

Two of the exhibits are UCC-1 Financing Statements filed by Leonite in Delaware and Nevada. Another exhibit is Leonite's Notice that Leonite intended to foreclose on the collateral. The last exhibit is the Curriculum Vitae of the individual Leonite seeks to have appointed as a receiver.

Leonite has also filed a declaration by Avi Geller, Leonite's Chief Investment Officer, supporting its motion, describing Leonite's advance of $500,000.000 to Founders Bay on April 7, 2021 (D.I. 5 at 2, ¶ 9), Founders Bay's events of default (*id.* at 3, ¶ 10), Leonite's unsuccessful attempts at contacting Founders Bay (*id.* at 3, ¶ 11), and Founders Bay Holding's default status. (*Id.* at 4, ¶ 12).

This evidence does not prove that Leonite is entitled to "an extraordinary equitable remedy that is only justified in extreme situations." *Aviation Supply Corp.*, 999 F.2d at 316. At best, Leonite has shown that Founders Bay has defaulted on the contract and that Founders Bay has not been forthcoming about its financial status.

Setting aside the question of Leonite's likelihood of success in the action, Leonite has not presented enough evidence to establish that a receiver should be appointed. It has shown no evidence of the possibility of irreparable injury to Leonite (factor 2), the inadequacy of the security to satisfy the debt (3), fraudulent conduct (4), Founders Bay's financial position (5), the risk of loss of Founders Bay's assets (6), the inadequacy of other less drastic remedies (7 & 8), or the probability that appointing a receiver would do more harm than good (9). Leonite admits that it "has no direct information regarding [Founders Bay], the current status of their operations, or the status and value of its Collateral." (D.I. 4 at 6, ¶ 16). Leonite acknowledges that the existence of fraudulent conduct and financial position of the debtor is "unknown," (*id.* at 10, ¶¶ 27–28), and relies on Founders Bay's lack of communication to suggest an inference that other factors, such as the risk of loss and the possibility of irreparable injury, cut in Leonite's

favor. (*Id.* at 9, ¶ 25; *id.* at 10, ¶ 29). But "the appointment of a receiver is a harsh remedy, not to be imposed without a showing of necessity." *Donovan v. Bierwirth*, 680 F.2d 263, 276 (2d Cir. 1982). The absence of knowledge is not enough to show necessity, especially where there is no evidence that Leonite has attempted to conduct discovery into the issues which could inform the court's decision on the matter.

Leonite argues that, under Section 7(a)(i)(G) of the Security Agreement, Founders Bay consented to the appointment of a receiver, and this should weigh heavily in favor of appointing a receiver. The Security Agreement provides: "To the extent permitted by applicable law, [Leonite] shall have the following rights and remedies regarding the appointment of a receiver: (1) [Leonite] may have a receiver appointed as a matter of right . . . ." (D.I. 5-3 at 8, § 7(a)(i)(G)).

Some courts have found that prior consent to the appointment of a receiver is a controlling factor. *See Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) (affirming appointment of a receiver where the parties had contracted to the appointment of a receiver in the event of foreclosure); *Am. Bank & Tr. Co. v. Bond Int'l Ltd.*, No. 06-CV-0317-CVE-FMH, 2006 WL 2385309, at *7 (N.D. Okla. Aug. 17, 2006) ("Appointment of a receiver is appropriate where the parties have contractually agreed to a receivership."). Others have considered it as "simply one factor among the others that a court must consider." *Fed. Nat'l Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, No. 10-cv-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010); *see also Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (finding contractual language that a party "may apply for the appointment of a receiver" favored appointment but did not create a contractual right to the appointment); *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, Civil Action No. 14-0461-WS-C, 2014 WL 6065778, at *4 (S.D. Ala. Nov. 13, 2014)

6

("[P]ersuasive federal case law has determined that contractual consent is merely one non-dispositive factor in the overarching equitable inquiry [for the appointment of a receiver]."); *F.D.I.C. v. Vernon Real Est. Invs., Ltd.*, 798 F. Supp. 1009, 1012 (S.D.N.Y. 1992) ("[T]he court has the discretion to deny appointment of a receiver under the appropriate circumstances even though the mortgage provides the mortgagee a specific right to an appointment."). There does not appear to be controlling precedent in the Third Circuit on the issue.

Even if consent to the appointment of a receivership could be a controlling factor, the agreement at issue here differs in material respects from those that have been given controlling weight. In *Britton*, for instance,

> By the terms of the mortgage, the mortgagor expressly agreed that in the event of a foreclosure suit, the mortgagee is entitled, 'as a matter of right,' to the appointment of a Receiver . . . , and the mortgagor waived all notice of the filing and hearing of such application for appointment of Receiver, and irrevocably consented to an appointment made pursuant thereto.

325 F.2d at 382. In this case, there is no "ironclad consent language" for the appointment of a receiver. *PNC Bank*, 2014 WL 6065778, at *4. The parties expressly contemplated that the appointment of a receiver to be governed by the "applicable law." (D.I. 5-3 at 8, § 7(a)(i)(G)). That is, Leonite "may have a receiver appointed as a matter of right" only if the applicable law provides such a right. Under these circumstances, it is appropriate for Founders Bay to argue and for the court to consider whether the requirements of the applicable law have not been satisfied. I conclude that they have not been satisfied, even considering the Agreement's receiver clause as a factor favoring the appointment of a receiver. In any event, in my discretion I conclude that it is not appropriate to do so on this undeveloped record.

IT IS HEREBY ORDERED that Plaintiff's Emergency Motion to Appoint Receiver (D.I. 3) is **DENIED**.

Dated: March 1, 2023

Honorable Timothy B. Dyk
United States Circuit Judge, sitting by designation